# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 23-2582

---

Management Registry, Inc.

Plaintiff - Appellee

v.

A.W. Companies, Inc.

Defendant

Allan K. Brown

Defendant -Appellant

Wendy Brown; Milan Batinich

Defendants

---

Appeal from the U.S. District Court for the District of Minnesota
(0:17-cv-05009-JRT)

---

## BRIEF OF APPELLANT

---

NILAN JOHNSON LEWIS PA
Joel Andersen (#352573)
Katie M. Connolly (#0338357)
Christopher T. Ruska (#0401745)
250 Marquette Avenue South,
Suite 800
Minneapolis, MN 55401

MORRIS & MORRIS, P.S.C.
James M. Morris (KY #85709)
217 North Upper Street
Lexington, KY 40507
(859) 281-6981
jmorris@m-mlaw.com

(612) 305-7500
jandersen@nilanjohnson.com
kconnolly@nilanjohnson.com
cruska@nilanjohnson.com

Attorneys for Defendant -
Appellant Allan K. Brown

FAFINSKI MARK & JOHNSON
V. John Ella (#249282)
775 Prairie Center Drive, Suite 400
Eden Prairie, MN 55344
(952) 995-9500
john.ella@fmjlaw.com

Attorneys for Plaintiff - Appellee
Management Registry, Inc.

# SUMMARY OF THE CASE

The Federal Arbitration Act ("FAA") grants arbitrators broad authority but not without some judicial oversight. In this appeal, Allan K. Brown challenges an arbitration award, highlighting fundamental flaws in the process. *First*, the Arbitrator exceeded the contract's boundaries, excusing MRI from its compensation commitment to Brown. *Second*, the Arbitrator disregarded the contractual framework and imposed his own sense of fairness. *Third*, the Arbitrator addressed an issue not submitted by the parties. *Fourth*, the Arbitrator refused to admit crucial evidence pertaining to Brown's counterclaim and defense, denying him a fundamentally fair hearing. Brown implores this Court to rectify these manifest injustices that occurred in a venue he recognizes courts are loathe to interfere. But the Arbitrator's actions have cast a shadow over fairness, which must be addressed to uphold the integrity of the arbitration process and preserve the sanctity of contractual obligations.

In consideration of the case's breadth and complexity, Brown requests oral argument of 20 minutes per side.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................................. i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES............................................................................. iv

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES ........................................................................2

STATEMENT OF THE CASE............................................................................3

I.     RELEVANT BACKGROUND.....................................................................3

II.    BROWN'S FRAUD CLAIMS ARE LITIGATED SEPARATELY ...........5

SUMMARY OF THE ARGUMENT..................................................................12

STANDARD OF REVIEW AND ARGUMENT................................................15

I.     STANDARD OF REVIEW ......................................................................15

II.    THE COURT SHOULD VACATE THE ARBITRATOR'S
       BREACH OF CONTRACT DETERMINATION ...................................17

       A.     The Arbitrator improperly invented a basis, not contained
             in the Employment Agreement, for avoiding MRI's
             obligation to continue paying Brown...........................................17

       B.     The Arbitrator inappropriately substituted his view of
             fairness over the Employment Agreement terms.......................29

       C.     The Arbitrator decided an issue—whether MRI
             terminated Brown's employment "for Cause"—that the
             Parties never presented for determination..................................34

III.   THE ARBITRATOR REFUSED TO HEAR EVIDENCE
       RELATED TO BROWN'S FRAUDULENT INDUCEMENT
       COUNTERCLAIM AND DEFENSE ......................................................35

       A.     The Scope Order was an evidence-precluding decision,
             not a dispositive merits decision..................................................37

B.     The Arbitrator's Scope Order manifestly misconstrued Brown's Employment Agreement fraud counterclaim ..............42

C.     Brown should have been allowed to present evidence showing he was fraudulently induced into entering into the Employment Agreement ..........................................................44

D.     The Arbitrator's refusal to hear evidence related to fraudulent inducement deprived Brown of a fair hearing ........47

E.     Brown did not waive his right to challenge the Arbitrator's Scope Order .................................................................49

IV.   THE DISTRICT COURT CLERK OFFICE'S RECORDING OF THE JUDGMENT, WHICH IS SOLELY AGAINST BROWN, SHOULD BE CLARIFIED AND/OR CORRECTED TO ACCURATELY REFLECT THE REALITY THAT THE JUDGMENT IS AGAINST ONLY BROWN, AND NOT ANY OTHER INDIVIDUALS OR ENTITIES ...................................................52

CONCLUSION .......................................................................................58

CERTIFICATE OF TYPE-VOLUME COMPLIANCE ......................................61

CERTIFICATE OF SERVICE ...............................................................................63

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Alcan Packaging Co. v. Graphic Commc'n Conf.*,
   729 F.3d 839 (8th Cir. 2013) ...............................................................................16

*Boehringer Ingelheim Vetmedica, Inc. v. UFCW Local Two*,
   739 F.3d 1136 (8th Cir. 2014) ...........................................................................24

*Brown v. Brown-Thill*,
   762 F.3d 814 (8th Cir. 2014) .........................................................................2, 37

*Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Loc. 1B*,
   284 F.3d 821 (8th Cir. 2002) .........................................................................2, 28

*CenterPoint Energy Res. Corp. v. Gas Workers Union, Local No. 340*,
   920 F.3d 1163 (8th Cir. 2019) ...........................................................................28

*Cont'l Holdings, Inc. v. Crown Holdings Inc.*,
   672 F.3d 567 (8th Cir. 2012) ..............................................................................36

*Davis v. Re-Trac Mfg. Corp.*,
   149 N.W.2d 37 (Minn. 1967) .............................................................................41

*Delta Queen S.B. Co. v. Dist. 2 Marine Eng'rs & Beneficial Ass'n*,
   889 F.2d 599 (5th Cir. 1989) ..............................................................................16

*Dematic Corp. v. Int'l Union, United Auto. Aero., & Agric. Implement Workers of Am. & UAW Local 1485*,
   635 F. Supp. 2d 662 (W.D. Mich. 2009) ...........................................................28

*Dixie Fuel Co., LLC v. Straight Creek, LLC*,
   2011 U.S. Dist. LEXIS 162534 (E.D. Ky. Oct. 27, 2011) ..................................37

*Grand Rapids Die Casting Corp. v. Local Union No. 159*,
   684 F.2d 413 (6th Cir. 1982) ..............................................................................30

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ............................................................................................16

*Harry Hoffman Printing, Inc. v. Graphic Comm'cns Int'l Union, Local 261*,
   950 F.2d 95 (2d Cir. 1991) .................................................................................16

*Hoffman v. Cargill, Inc.*,
   236 F.3d 458 (8th Cir. 2001) ..............................................................................28

*Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*,
763 F.2d 34 (1st Cir. 1985)................................................2, 47, 48

*Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*,
71 F.3d 179 (5th Cir. 1995) ..............................................26

*Hudson v. ConAgra Poultry Co.*,
484 F.3d 496 (8th Cir. 2007) ............................................15

*IMC-Agrico Co. v. Int'l Chem. Workers Council, Local 35-C*,
171 F.3d 1322 (11th Cir. 1999) .........................................26

*Int'l Chem. Workers Union Local No. 566 v. Mobay Chem. Corp.*,
755 F.2d 1107 (4th Cir. 1985) ..........................................34

*Int'l Union of Operating Eng'rs v. Murphy Co.*,
82 F.3d 185 (7th Cir. 1996) .............................................17

*Kronzer v. First Nat'l Bank*,
235 N.W.2d 187 (1975) ................................................52

*Manion v. Nagin*,
392 F.3d 294 (8th Cir. 2004) ............................................15

*Mo. River Servs., Inc. v. Omaha Tribe of Neb.*,
267 F.3d 848 (8th Cir. 2001) ..........................................2, 26

*Office & Pro'l Employees Int'l Union, Local 471 v. Brownsville Gen'l Hosp.*,
186 F.3d 326 (3d Cir. 1999) ............................................51

*OSCO Motors Co., LLC v. Quality Mark, Inc.*,
2014 U.S. Dist. LEXIS 116536 (D. Minn.)...............................29

*PBI Bank, Inc. v. Signature Point Condominiums LLC*,
535 S.W.3d 700 (Ky. App. 2016)......................................45

*Radioshack Corp. v. Comsmart, Inc.*,
222 S.W.3d 256 (Ky. App. 2007)...................................*passim*

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)......................................................39

*Riniker v. UnitedHealth Grp., Inc.*,
2015 U.S. Dist. LEXIS 51300 (D. Minn.)...............................37

*Schedin v. Johnson & Johnson (In re Levaquin Prods. Liab. Litig.)*,
    2010 U.S. Dist. LEXIS 145282 (D. Minn. Nov. 9, 2010) .................................38

*Schoch v. InfoUSA, Inc.*,
    341 F.3d 785 (8th Cir. 2003) ...........................................................15

*Sears, Roebuck & Co. v. Teamsters Local Union No. 243*,
    683 F.2d 154 (6th Cir. 1982) ...........................................................27

*St. Louis Theatrical Co. v. St. Louis Theatrical Bhd. Local 6*,
    715 F.2d 405 (8th Cir. 1983) ...........................................................30

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) .......................................................................30

*Summa Holdings, Inc. v. Commissioner*,
    848 F.3d 779 (6th Cir. 2017) ...........................................................33

*Sunshine Mining Co. v. United Steelworkers of Am.*,
    823 F.2d 1289 (9th Cir. 1987) .........................................................31

*United Parcel Serv. Co. v. Rickert*,
    996 S.W.2d 464 (Ky. 1999) .............................................................40

*United States Postal Serv. v. Am. Postal Workers Union*,
    907 F. Supp. 2d 986 (D. Minn. 2012) ...............................................30

*United States v. Richardson*,
    427 F.3d 1128 (8th Cir. 2005), *modified on other grounds by* 439
    F.3d 421 (8th Cir. 2006) (en banc) ...................................................36

*Warrior & Gulf Nav. Co. v. United Steelworkers of Am., AFL-CIO-CLC*,
    996 F.2d 279 (11th Cir. 1993) .........................................................26

*Williams v. New Castle Cnty.*,
    970 F.2d 1260 (3d Cir. 1992) ..........................................................51

**Statutes**

9 U.S.C. §§ 10-11 ...............................................................................15

9 U.S.C. § 10(a)(3) & (4) ................................................................12, 16

9 U.S.C. §§ 10(a)(3) & 10(a)(4) ......................................................29, 33

9 U.S.C. §§ 11(b) ..........................................................................16, 35

9 U.S.C. § 16(a)(3) ..............................................................................1

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) .......................................................................1

Fed. R. App. P. 12.1 ...........................................................................2, 58

Fed. R. Civ. P. 60 ..................................................................................2

Fed. R. Civ. P. 62.1 ...............................................................................2

# JURISDICTIONAL STATEMENT

The district court had jurisdiction to confirm or vacate the at-issue Arbitration Award under sections 9 and 10 of the FAA, 9 U.S.C. §§ 9-10. Under section 16 of the FAA, 9 U.S.C. § 16(a)(3), this Court has jurisdiction to review de novo the district court's order confirming the Award and dismissing Brown's counterclaim as having been "effectively resolved in the arbitration proceed". The district court entered on June 28, 2023, the order from which this appeal is taken. Brown timely filed his notice of appeal on July 5, 2023. *See* Fed. R. App. P. 4(a)(1)(A).

# STATEMENT OF THE ISSUES

1. Whether the district court erred in confirming the Award against Brown?

   **Apposite authorities:** *Mo. River Servs., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848 (8th Cir. 2001); *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Loc. 1B*, 284 F.3d 821, 824 (8th Cir. 2002)

2. Whether the district court erred when it (1) determined the Arbitrator's Scope Order was not an evidence precluding determination, but rather a substantive merits determination of Brown's fraudulent inducement counterclaim and defense, and (2) determined Brown "stipulated" not to pursue his fraudulent inducement counterclaim and defense by complying with the Arbitrator's unqualified evidence precluding order?

   **Apposite authorities:** *Brown v. Brown-Thill*, 762 F.3d 814 (8th Cir. 2014); *Radioshack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256 (Ky. App. 2007); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985)

3. Whether the district court clerk office's recording of the judgment, which is solely against Brown, should be clarified and/or corrected to accurately reflect the reality that the judgment is against only Brown, and not any other individuals or entities?

   **Apposite authorities:** Fed. R. Civ. P. 60; Fed. R. Civ. P. 62.1; Fed. R. App. P. 12.1

## STATEMENT OF THE CASE

### I.    RELEVANT BACKGROUND

MRI is a recruiting and staffing company.  App. 4; R. Doc. 37, at 1.

Brown was the president and part owner of a suite of companies collectively

called AllStaff including, as relevant here, the Minnesota-based non-

industrial divisions of AllStaff known as AllStaff Recruiting Inc. ("ARI" or

the "Minnesota Businesses").  App. 27; R. Doc. 608-1, at 4.  Mary and Mel

Zwirn were also part owners of AllStaff alongside Brown.  App. 30; R. Doc.

608-1, at 12.  In 2016, the Zwirns contemplated selling AllStaff to MRI, owned

by Tim and Terry Malone, due to Mel Zwirn's declining health.  App. 31; R.

Doc. 608-1, at 116.  Brown and MRI negotiated the sale of AllStaff via a Stock

Purchase Agreement ("SPA"), and the sale closed in September 2017.  *See*

*generally* App. 33-72; R. Doc. 608-2.

Before the acquisition from the Zwirns, MRI and Brown entered into

an Employment Agreement to ensure Brown's continued role as president

of AllStaff.  App. 97-105; R. Doc. 636-1, at 25-33.  The Employment

Agreement contained a mandatory arbitration clause.  App. 104, R. Doc. 636-

1, at 32.

Early in the sale process, Brown and MRI discussed selling the Minnesota Businesses to Brown's wife, Wendy Brown (the "Minnesota Deal").  App. 28-29, 32; R. Doc. 608-1, at 5-6, 55.[1]  Under the terms of the sale, Brown would continue to serve as president of the AllStaff companies, "other than the non-industrial business of AllStaff Recruiting, Inc." App. 183; R. Doc. 748-6, at 11.

In early September 2017, MRI took possession of AllStaff.  App. 93-95; R. Doc. 608-7, at 23-25.   The management of the Minnesota Businesses between September and November 2017 and the facts relating to the dissolution of the Minnesota Deal are disputed by the parties.  However, between September and November 2017, Wendy operated in a leadership role in the Minnesota Businesses.  *See id.,* App. 91-92, 96 ; R. Doc. 608-7, at 32; R. Doc. 608-6, at 43 & 50 (Minnesota Businesses' employees testifying either that they believed MRI was not their employer or that they worked under Wendy).

---

[1] Appellant is referred to as "Brown" with his wife as "Wendy".

By the end of October 2017, the Minnesota Deal fell apart.  App. 2-3; R. Doc. 25, at 7-8.  Shortly after, Wendy created her own business, A.W. Companies, Inc. ("A.W."), and MRI terminated Brown's employment. App. 106; R. Doc. 636-3, at 2.

MRI sued Brown, Wendy, and A.W. in the United States District Court for the District of Minnesota.  Brown asserted various counterclaims, including without limitation one for breach of contract, alleging MRI fired him without cause and therefore owed him continued compensation under the terms of his Employment Agreement; and another for common law fraudulent inducement.  App. 15-18; R. Doc. 72, at 69-72.

## II.    BROWN'S FRAUD CLAIMS ARE LITIGATED SEPARATELY

Brown's fraudulent inducement counterclaim alleged MRI led Brown to believe that if he entered into the SPA and the Employment Agreement, MRI would sell Wendy the Minnesota Businesses.  App. 15-16; R. Doc. 72, at 69-70. The claim therefore encompassed both fraud as to the Employment Agreement (hereinafter the "EA fraud counterclaim"), and as to the SPA (hereinafter the "SPA fraud counterclaim").  *Id.*

The SPA fraud counterclaim proceeded to litigation in the district court because the SPA did not contain an arbitration provision, undergoing lengthy and extensive discovery, and being subject to analysis and decision on the parties' summary judgment motions.  The district court ultimately held there was sufficient evidence for a jury to determine whether Brown was fraudulently induced into the SPA.  *See* App. 108-09; R. Doc. 676, at 32-33.[2]

As to the EA fraud counterclaim, MRI moved to compel it to arbitration under the Employment Agreement's arbitration provision.  The district court granted MRI's motion, holding "the mandatory-arbitration provision in the employment agreement between MRI and Mr. Brown is a valid agreement to arbitrate and that Counts II, VII, and VIII of Mr. Brown's counterclaims fall within its scope."  App. 22; R. Doc. 123, at 4.  The district court did not then dismiss the EA fraud counterclaim, but stayed it "until such arbitration has been had in accordance with the terms of the

---

[2] The district court's summary judgment order is, as of the date of this filing, under reconsideration.

agreement." *Id.* at Order #3. In particular, the district court held at pages 4-5:

> "The [Federal Arbitration Act] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it. *See* 9 U.S.C. § 3 (stating district courts '**shall** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement') (emphasis added)." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (alterations in original). In *Green*, the Eighth Circuit held that a district court abuses its discretion when it dismisses, rather than stays, arbitrable claims when "it is not clear all of the contested issues between the parties will be resolved by arbitration." *Id*. at 770. Here, on the limited record, the Court is not persuaded that arbitration will resolve all the issues between MRI and Mr. Brown, as evidenced by how intertwined many of the claims are, including the claims asserted by and against the other defendants. Accordingly, the Court will stay Counts II, VII, and VIII of Mr. Brown's counterclaims.

Brown followed the district court's order on MRI's motion to compel arbitration and asserted his EA fraud counterclaim in the parties' arbitration (the "Kentucky Arbitration"). MRI brought a procedural motion to dismiss that counterclaim in the Kentucky Arbitration. *See* App. 149-153; R. Doc. 748. The parties contemporaneously described to the Arbitrator what claims and

counterclaims they considered to be submitted to the Arbitrator, based on the district court's order on the motion to compel arbitration and the parties' meet-and-confer efforts. MRI contended Brown's EA fraud counterclaim "exceeds the scope of the parties' arbitration agreement." *See* App. 155; R. Doc. 748-1, at 6. Brown, to the contrary, contended his EA fraud counterclaim was within the arbitration's scope. *See* App. 159-60; R. Doc. 748-2, at 5-6.

In denying MRI's procedural motion to dismiss, the Arbitrator noted the EA fraud counterclaim "listed by Respondent in his submission w[as] substantially the same as had been asserted in the Minnesota District action." *See* App. 162; R. Doc. 748-3, at 3. The Arbitrator further noted at page 4:

> [E]quitable considerations lend further support to the conclusion that Respondents' Counterclaims should be heard as part of this proceeding. Claimant moved the federal court to compel arbitration of the Counterclaims Respondent submitted in that proceeding, and is now seeking to adjudicate in this arbitration. Claimant is now asking the Arbitrator to strike those very claims, which would be contrary to its previous requests and would presumably preclude those claims being litigated in any forum. The resulting prejudice to Respondent is obvious

and such action should not be taken unless clearly required by the application of the AAA Rules.

In a separate initial order on the arbitration's scope, the Arbitrator further concluded Brown's EA fraud counterclaim "will be submitted for adjudication at this arbitration proceeding." *See* App. 166-67; R. Doc. 748-4, at 5-6.  In that same initial order, the Arbitrator noted it "may be beneficial to give counsel the opportunity to offer perspectives and suggestions as to actions that might be taken—in advance of the arbitration hearing—to attempt to narrow the issues and/or reduce the possibility that those complex (and perhaps overlapping) claims would result in inconsistent determinations of fact or law result in 'double recovery', etc." App. 168; R. Doc. 748-4, at 7.

As previewed by the Arbitrator in his initial scope order, and before the Kentucky Arbitration hearing commenced, the parties later disputed through various motions *in limine*, pre-hearing memoranda, and discussions with the Arbitrator what evidence could be presented to the Arbitrator and what claims and counterclaims were within the scope of the Employment Agreement's arbitration provision.  *See* App. 169; R. Doc. 748-5, at 2 (Order

on Scope of Arbitration, hereinafter "Scope Order"). In response, the Arbitrator issued a Scope Order regarding what claims and counterclaims he would hear and the evidence the parties could submit in the Kentucky Arbitration hearing. One such category of evidence, which obviously was directly material to Brown's EA fraud counterclaim and his defense to MRI's breach of contract claim, was: "Evidence regarding MRI's false or fraudulent inducement of Brown to enter into the [Employment] Agreement." App. 175; R. Doc. 748-5, at 8. The Arbitrator determined Brown could not present that evidence at the hearing, effectively ruling he would not hear Brown's EA fraud counterclaim, contrary to the initial scope order stating he would hear it. App. 175-179 R. Doc. 748-5, at 8-12. The Kentucky Arbitration was heard on March 21-25, March 28-29, and May 2, 2022, and the Arbitrator issued his final award on November 14, 2023. *See generally* App. 193-249; R. Doc. 781, at 2-58.

Brown moved the district court to vacate the Award, and MRI moved to confirm it. As part of Brown's arguments, he alternatively requested the district court lift the stay it had issued on Brown litigating his EA fraud

counterclaim in the district court (as a result of the district court compelling that counterclaim to arbitration), arguing the Arbitrator had refused to hear that counterclaim so it should proceed in district court. The district court granted the motion to lift the stay, but only so it could immediately dismiss Brown's EA fraud counterclaim "accordingly, having found it effectively resolved in the arbitration proceeding." *See* App. 277; Add. 26; R. Doc. 789, at 26.

# SUMMARY OF THE ARGUMENT

Brown requests reversal of the district court's order affirming the Arbitration Award and its resultant order dismissing Brown's EA fraud counterclaim. Although the FAA grants arbitrators wide latitude in deciding cases presented before them, that power is not without limits. The Arbitrator here exceeded those limits.

First, the Arbitrator exceeded his power in deciding MRI's breach of contract claim such that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 10(a)(3) & (4). This is so for a few different reasons.

To start, the Arbitrator created a rationale, which was not within the scope of the Employment Agreement, to excuse MRI from its ongoing obligation to compensate Brown. The Employment Agreement permitted MRI to avoid certain pay continuation obligations to Brown if MRI *actually* fired Brown for Cause. But the Arbitrator determined MRI had no such obligations if it *could have* fired Brown for Cause (theoretically, but not actually having done so). This is reversible error because an arbitrator

cannot ignore nor issue an award that contradicts a contract's plain language.

The Arbitrator also improperly prioritized his interpretation of fairness over the Employment Agreement's provisions. Rather than adhering to the clear and unequivocal contract language, which both parties engaged the Arbitrator to enforce, the Arbitrator stated that he would not prioritize "form over substance" by not interpreting the Employment Agreement as written and applying the evidence accordingly.  This too is reversible error because an arbitrator must interpret and enforce a contract as written, not make public policy.

The Arbitrator also made a decision on an issue—whether MRI terminated Brown's employment "for Cause"—that the Parties had not submitted for resolution.  They disputed only whether Brown resigned or was fired *without* Cause.  This is also reversible error because an arbitrator cannot decide a matter outside the issues parties submit.

Second, the Arbitrator violated the FAA § 10(a)(3) by refusing to hear evidence that MRI fraudulently induced Brown to enter into the

Employment Agreement, which was pertinent and material to the controversy. The Arbitrator issued an arbitration hearing scope order that disallowed Brown from having evidence relating to fraudulent inducement be received. The Arbitrator regarded Brown's tort claim as a matter of contract interpretation and parol evidence, even though it pertained to fraudulent misrepresentations made outside the contract. Accordingly, the Arbitrator committed reversible error because he deprived Brown of a fair arbitration hearing. The district court then misapplied the Arbitrator's decision to conclude the Arbitrator had effectively decided Brown's EA fraud counterclaim, consequently dismissing that counterclaim in the district court action.

Finally, separate and aside from the foregoing merits arguments, and regardless of the Court reversing or affirming the district court's order, Brown requests the Court remand with direction to fix a clerical error in the Judgment, if that error has not already been fixed by the time the Court decides this appeal.

## STANDARD OF REVIEW AND ARGUMENT

## I.     STANDARD OF REVIEW

This Court reviews *de novo* questions of law but reviews the district

court's factual findings for clear error.  *Schoch v. InfoUSA, Inc.*, 341 F.3d 785,

788 (8th Cir. 2003).  Similarly, the Court reviews *de novo* the district court's

conclusion Brown's counter claim was resolved in Arbitration because it is

part of the district court's decision in determining whether to confirm,

vacate, modify or correct an arbitration award.  *See Hudson v. ConAgra*

*Poultry Co.*, 484 F.3d 496, 503 (8th Cir. 2007); *see also Manion v. Nagin*, 392 F.3d

294, 298, 300 (8th Cir. 2004) (reviewing *de novo* district court's conclusion and

dismissal of certain claims the district court determined were ruled on by an

arbitrator).

The FAA at Sections 10 and 11 sets forth the reasons an arbitration

award may be vacated, modified, and/or corrected.  *See* 9 U.S.C. §§ 10-11.

Among other reasons, an arbitration award may be vacated when an

arbitrator "refus[ed] to hear evidence pertinent and material to the

controversy"; "exceeded [his] powers, or so imperfectly executed them that

a mutual, final, and definite award upon the subject matter submitted was

not made"; or engaged in "misbehavior by which the rights of any party have been prejudiced." *Id*. § 10(a)(3) & (4). An award may be corrected or modified when the arbitrator "ha[s] awarded upon a matter not submitted to" him. *Id*. § 11(b).

Although deference is to be given to an arbitrator's award, this deference does not grant an arbitrator unlimited power to ignore law, disregard the parties' agreement, or impose obligations on the parties beyond that agreement. An arbitrator's authority is both derived only from, and limited by, the parties' agreement. *Harry Hoffman Printing, Inc. v. Graphic Comm'cns Int'l Union, Local 261*, 950 F.2d 95, 98 (2d Cir. 1991). Consequently, an arbitrator is not free to dispense his or her own brand of justice. *Id.* "[W]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen S.B. Co. v. Dist. 2 Marine Eng'rs & Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989).[3]

---

[3] This Court may by guided by authority under both the Labor Management Relations Act and the FAA regardless the statute governing arbitration, because arbitration under both statutory schemes is generally subject to the same governing principles. *See Alcan Packaging Co. v. Graphic Commc'n Conf.*, 729 F.3d 839, 841 (8th Cir. 2013); *see also, e.g., Granite Rock Co. v. Int'l Bhd. of*

## II. THE COURT SHOULD VACATE THE ARBITRATOR'S BREACH OF CONTRACT DETERMINATION

### A. The Arbitrator improperly invented a basis, not contained in the Employment Agreement, for avoiding MRI's obligation to continue paying Brown

MRI asserted in the Arbitration, among other things, that Brown resigned his MRI employment. App. 120; R. Doc. 718-2, at 6. Brown counterclaimed, among other things, that MRI breached the Employment Agreement by failing to continue paying him upon terminating his employment without cause. App 123-24; R. Doc. 737-1, at 17-18; *see also* App. 113; R. Doc. 718-1, at 4, § 9(e).[4] The Employment Agreement—which is the sole basis for the Arbitrator's authority—states Brown's MRI employment "shall not be terminated except as set forth in this Section 9." App. 112-13; R. Doc. 718-1, at 3-4, § 9.

---

*Teamsters*, 561 U.S. 287, 298 n.6 (2010); *Int'l Union of Operating Eng'rs v. Murphy Co.*, 82 F.3d 185, 188-89 (7th Cir. 1996).

[4] Brown argued MRI's prior material breach additionally meant MRI could not enforce the Employment Agreement's restrictive covenants against Brown and prevail on its breach of contract claim. *See* App. 222; R. Doc. 781, at 18.

Section 9 sets forth only these bases for cessation of Brown's MRI employment:

1) "<u>By Mutual Consent</u>" by written agreement of the parties

2) "<u>Death</u>"

3) "<u>Disability</u>"

4) "<u>By the Company for Cause</u>" (requiring written notice to Brown, described in the Employment Agreement as "Notice of Termination")[5]

5) "<u>By Company without Cause before three (3) years</u>" (upon which MRI must continue paying Brown for 11 months)[6]

---

[5] "The Executive's employment pursuant to this Agreement may be terminated by written notice to the Executive ("Notice of Termination") upon the occurrence of any of the following events (each of which shall constitute "Cause" for termination: (i) the Executive commits any acts of gross negligence, fraud or willful misconduct causing harm to the Company. . . ."

[6] "Executive is an at will employee who may be terminated at any time for any reason. However, if Executive is terminated without Cause within the first three (3) years of employment he will be given eleven months' prior written notice with pay: 1. During this eleven-month period, the Employee will perform all reasonable tasks associated with his position, including but not limited to, consulting with and advising his replacement and introducing his replacement to all customers of the Company with which Executive has personal contact. The executive shall not undermine the Company, or his replacement, or engage in any tactics designed to interfere with the Company or the Company's replacement's business relationship(s)

6) "<u>By Voluntary Resignation</u>"[7]

7) "<u>By Retirement</u>"

8) By Brown's "<u>Termination with Good Reason</u>"

App. 112-14; R. Doc. 718-1, at 3-5, § 9(a)-(h).

MRI defended against Brown's counterclaim by arguing Brown purportedly ended his MRI employment "<u>By Voluntary Resignation</u>" and that MRI had accepted his resignation, by providing to Brown an October 30, 2017, letter which, according to MRI, removed MRI's obligations to continue paying Brown.  The letter described itself as regarding "Agreement to Terminate Employment" and provided:

> We are in receipt of your electronic notification delivered to Management Registry, Inc. on Friday, October 27, 2017, confirming your earlier verbal notification to Tim and Terry Malone of your request to resign effective immediately.  While we have learned of numerous substantial and serious concerns related to your activities while employed by Management Registry, Inc., we simply accept your notice of your voluntary resignation, pursuant

---

with any third parties. The Company may in its discretion release Executive of this obligation at its discretion."

[7] "This Employment Agreement may be terminated by thirty (30) days' written notice from the Executive that he wishes to resign his position with the Company (other than by retirement or termination for Good Cause.)"

to ¶ 9(f) of your August 31, 2017 Employment Agreement, effective October 27, 2017.

App. 121; R. Doc. 737.

MRI's letter did not reference Section 9(d)—entitled "<u>By the Company for Cause</u>". MRI did not call the letter a "Notice of Termination" (the term used in the Employment Agreement to designate a termination under section 9(d)), nor did it even state that MRI is terminating Brown's employment. Despite the letter stating it was accepting Allan's resignation pursuant to Section 9(f) of the Employment Agreement (the "<u>By Voluntary Resignation</u>" section), the Employment Agreement does not require MRI to provide notice accepting Brown's alleged voluntary resignation, and the letter had a subject line "Agreement to Terminate Employment", suggesting MRI believed Allan's departure from MRI could be an agreement "<u>By Mutual Consent</u>" pursuant to Section 9(a) of the Employment Agreement. Regardless, neither position was that MRI was terminating Allan's employment "<u>for Cause</u>." Allan did not sign the letter indicating his agreement to it.

MRI consistently maintained the letter simply accepted Brown's purported resignation. For example, in its Arbitration summary judgment motion on Brown's breach of contract claim, MRI argued Brown had resigned and was not terminated. App. 126-27; R. Doc. 737-3, at 42-43. MRI filed two pre-Arbitration-hearing memoranda—in the first, MRI expressly asserted Brown resigned, and in the second, MRI claimed Brown's employment was terminated, but did not identify a basis for the termination. App. 128-29; R. Doc. 737-4, at 3; App. 131; R. Doc. 737-5, at 3.

Under the Employment Agreement, termination "<u>By the Company for Cause</u>", "<u>By Company without Cause</u>", and "<u>By Voluntary Resignation</u>" are different. In other words, the question of whether MRI's October 30, 2017 letter actually constituted written notice to Brown that his MRI employment was being terminated "<u>By the Company for Cause</u>" (under Section 9(d), with a "Notice of Termination") was not the issue either party presented to the Arbitrator for decision. The dispute presented to the Arbitrator regarding the end of Brown's MRI employment was only whether it ended "<u>By Company without Cause</u>" (under Section 9(e), such that MRI was obligated

to continue paying Brown pursuant to the Employment Agreement) or "<u>By Voluntary Resignation</u>" (under Section 9(f), such that MRI was not obligated to continue paying Brown).

This presentation of the issue in dispute was consistent with the testimony offered by MRI's owners at the hearing—that Brown resigned, and that MRI accepted his resignation by providing him (though unnecessary under the Employment Agreement) written notice of its acceptance of his resignation. MRI co-owner Terry Malone testified that when MRI's owners and vice president of human resources met with Brown on October 30, 2017, Brown said he had not resigned. App. 137; R. Doc. 737-6, at 25. In response, Terry Malone confirmed his prior testimony that he said to Brown during that meeting: "well you did resign[;] we're accepting it." *Id*. MRI's other co-owner, Tim Malone, confirmed his prior declaration stating that Brown resigned on October 27, 2017, and that MRI decided to accept that resignation at a meeting on October 29, 2017.[8] App. 135; R. Doc.

---

[8] Although Tim Malone stated in his declaration the meeting occurred on October 29, it appears, based on the entire record and testimony elicited at

737-6, at 11.  Tim Malone further confirmed he signed the October 30, 2017, letter to Brown stating that MRI had decided to accept Brown's resignation effective as of the purported date of his resignation—October 27, 2017. App. 138; R. Doc. 737-6, at 34.  Again, that letter specifically referred to "¶ 9(f)" of the Employment Agreement—the section entitled "<u>By Voluntary Resignation</u>"—stating that MRI is accepting Brown's voluntary resignation pursuant to that section.

MRI's post-Arbitration-hearing briefing confirmed it was disputing— and had engaged the Arbitrator to decide the dispute—whether or not Brown's MRI employment ended "<u>By Voluntary Resignation,</u>" not whether Brown's MRI employment ended "<u>By the Company for Cause.</u>"  In its post-Arbitration-hearing briefing, MRI reiterated its position that Brown resigned.  App. 251-52; R. Doc. 782, at 79-80.  In response to Brown's post-Arbitration-hearing briefing, MRI again asserted its position that Brown had resigned.   App. 142; R. Doc. 737-8, at 97 ("MRI has proven, through the

---

the Arbitration, he really meant October 30.  *See, e.g.*, App. 134-38; R. Doc. 737-6, at 8, 11, 12, 25.

documentation itself, that Brown resigned his employment. Despite the weight of the evidence, and no supporting testimony other than his own, Brown has argued that he was terminated by MRI." (internal citations omitted)). MRI hypothesized that even if Brown did not resign he *would have been* terminated for Cause. But critically, MRI never asserted—so the Arbitrator had no basis on which to find—that it *did in fact* terminate Brown's employment for Cause. App. 143; R. Doc. 737-8, at 98. Instead, MRI stated its position again—in that same paragraph—that Brown resigned. *Id*. In its post-Arbitration-hearing reply brief, MRI again reiterated its position that Brown resigned. App. 145; R. Doc. 737-9, at 27. In its post-Arbitration-hearing sur-reply, MRI restated its position that Brown resigned. App. 147; R. Doc. 737-10, at 16.[9]

---

[9] For MRI to argue now in court that it actually fired Brown, contrary to its consistent positions in arbitration that Brown resigned, is also impermissible sandbagging. *Cf. Boehringer Ingelheim Vetmedica, Inc. v. UFCW Local Two*, 739 F.3d 1136, 1140 (8th Cir. 2014) ("[F]ederal courts do not permit a party to withhold an issue or argument during arbitration and then, upon losing, raise it to the reviewing court. . . . We will not tolerate such sandbagging." (citation and internal quotation omitted)).

Despite MRI's consistent position throughout the Arbitration that Brown resigned—the Arbitrator did not find that Brown resigned. Rather, what the Arbitrator *did* find was that (1) MRI *could have* theoretically terminated Brown's MRI employment for Cause; and (2) the October 30, 2017, letter stated that MRI was accepting Brown's alleged notice of resignation. Based on these two findings, the Arbitrator did *not* reject Brown's counterclaim for pay continuation on the ground that Brown had resigned, or on the ground that MRI succeeded in proving it fired Brown for Cause; rather, the Arbitrator concluded that MRI merely *had grounds to* fire Brown for Cause (theoretically, but not actually having done so): "The Arbitrator therefore finds that Claimant had grounds to terminate Respondent's employment for 'Cause' pursuant to the terms of the Employment Agreement, and that, but for Claimant's willful misconduct, Respondent's employment would not have terminated on October 30, 2017." App. 242; R. Doc. 781, at 51.

But the Arbitrator's results-oriented determination was not a basis enumerated in the Employment Agreement for MRI to avoid continuation

of pay to Brown.  In the event Brown's MRI employment was terminated "<u>By Company without Cause,</u>" he is entitled to 11 months of salary continuation.  If Brown's MRI employment was *actually* terminated "<u>By the Company for Cause</u>" or "<u>By Voluntary Resignation,</u>" no such payment continuation was required.  Further, if MRI terminated Brown's employment for Cause, MRI was required to provide him written notice that he was being terminated (a "Notice of Termination").  The Arbitration Award does not find that MRI provided Brown with such notice, nor could it have, because there never was such written notice.

"An arbitrator 'may not ignore the plain language of the contract.'" *Warrior & Gulf Nav. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 996 F.2d 279, 281 (11th Cir. 1993) (quotation omitted).  That means an arbitrator may not "issue[] an award that contradicts the express language of the agreement."  *IMC-Agrico Co. v. Int'l Chem. Workers Council, Local 35-C*, 171 F.3d 1322, 1325 (11th Cir. 1999).  It also means an arbitrator may not modify clear and unambiguous contract terms.  *See Mo. River Servs., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001); *see also Houston Lighting &*

*Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 184 (5th Cir. 1995) ("If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning."); *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155 (6th Cir. 1982) ("[A]n arbitrator may construe ambiguous contract language, but lacks authority to disregard or modify plain or unambiguous contract provisions.").

The Arbitrator's sole job was to enforce the Employment Agreement— that is what the parties hired him to do. The bottom line is that the Employment Agreement does not state that if MRI terminated Brown's MRI employment without Cause, but *could have* theoretically terminated his MRI employment with Cause, then MRI could avoid pay continuation by simply notifying Brown it *could have* theoretically fired him with Cause but instead was accepting a purported resignation.

In making his ruling, the Arbitrator ignored the Employment Agreement's clear and unequivocal terms, and essentially drafted and inserted a new subsection into it: "If a termination under Section 9 subsections (a), (b), (c), (e), (f), (g), or (h) do not apply, but subsection (d)

*could* apply, then subsection (d) *does* apply." But there was no such contractual term. The Arbitrator's outcome-directed decision is unenforceable, because an arbitrator cannot re-write a contract to fit his feelings of fairness. *Dematic Corp. v. Int'l Union, United Auto. Aero., & Agric. Implement Workers of Am. & UAW Local 1485*, 635 F. Supp. 2d 662, 673 (W.D. Mich. 2009). Inventing a new contract provision to fit a hypothetical fact is not "arguably construing" the Employment Agreement; it is, rather "completely irrational." *See Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Loc. 1B*, 284 F.3d 821, 824 (8th Cir. 2002); *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).

Nor was there anything in the Employment Agreement's text to suggest an interpretive route to the Arbitrator's insertion. *See CenterPoint Energy Res. Corp. v. Gas Workers Union, Local No. 340*, 920 F.3d 1163, 1168 (8th Cir. 2019). Nothing in the Employment Agreement's arbitration provision permitted the Arbitrator to insert new terms into the Employment Agreement, nor did the Arbitrator find (nor could he find) he was permitted to do so.

In inserting a new provision into the Employment Agreement, the Arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," engaged in "misbehavior by which the rights of any party have been prejudiced," and "awarded upon a matter not submitted to" him.  *See* 9 U.S.C. §§ 10(a)(3) & 10(a)(4).

**B.**     **The Arbitrator inappropriately substituted his view of fairness over the Employment Agreement terms**

Instead of applying the Employment Agreement's unambiguous language both parties hired the Arbitrator specifically to apply, the Arbitrator instead noted simply that by not construing the Employment Agreement as written and applying the evidence to that writing, he was refusing to elevate "form over substance."  App. 242; R. Doc. 781, at 51.  But the Arbitrator never explained under what authority he could ignore form, because there is none.

"[W]hen the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' . . . his decision may be unenforceable."  *OSCO Motors Co., LLC v.*

*Quality Mark, Inc.*, 2014 U.S. Dist. LEXIS 116536, at \*19 (D. Minn.) (citing

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)); *see*

*United States Postal Serv. v. Am. Postal Workers Union*, 907 F. Supp. 2d 986, 993

(D. Minn. 2012) (vacating arbitration award because arbitrator "did more

than simply misinterpret the collective bargaining agreement[, but instead]

essentially rewrote it, foisting requirements onto the Postal Service that did

not exist"). "In that situation, an arbitration decision may be vacated under

§ 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his]

powers,' for the task of an arbitrator is to interpret and enforce a contract,

not to make public policy." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,

559 U.S. 662, 672 (2010). An arbitrator's decision should be set aside when

he "substituted terms . . . he felt were reasonable for the terms of the

agreement." *Grand Rapids Die Casting Corp. v. Local Union No. 159*, 684 F.2d

413 (6th Cir. 1982).

The parties did not submit claims to the Arbitrator so he could apply

his own view of rough justice. Nor did they ask the Arbitrator to make some

equitable ruling notwithstanding the underlying contract language. *See St.*

*Louis Theatrical Co. v. St. Louis Theatrical Bhd. Local 6*, 715 F.2d 405, 409 (8th Cir. 1983). They asked the Arbitrator to determine a dispute actually submitted to him by applying the actual (not theoretical) facts to the contract as drafted. *See, e.g., Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1294 (9th Cir. 1987) ("The scope of the arbitrator's authority is limited to the issue submitted to him by the parties.")

MRI cannot seriously argue the Arbitrator's conclusion is not based on "his own brand of industrial justice" or that it was derived from his view of "policy" as opposed to the Agreement, or that he "substituted terms . . . he felt were reasonable for the terms of the agreement." The Arbitrator freely admitted his conclusion was not based on the Employment Agreement, stating it would be "artificial and inappropriate" to elevate "form over substance to conclude that Brown was 'terminated without cause' in violation of Section 9(e) so as to trigger an award of eleven (11) months' salary." App. 242; R. Doc. 781, at 51. But there is nothing "inappropriate" about applying "form" (the words of the agreement) to determine its "substance." What is "inappropriate" is for an arbitrator to determine what

he feels is fair, and then enforce his fairness feelings over the written words in contract clauses.

The Sixth Circuit's recent decision—under a different body of law—demonstrates just how absurd and untethered to the Employment Agreement the Arbitrator's conclusion was, with that court criticizing the evaluation of substance over form as Caligulan:

> Caligula posted the tax laws in such fine print and so high that his subjects could not read them. That's not a good idea, we can all agree. How can citizens comply with what they can't see? And how can anyone assess the tax collector's exercise of power in that setting?
>
> . . . .
>
> [But] [i]f the government can undo transactions that the terms of the Code expressly authorize, it's fair to ask what the point of making these terms accessible to the taxpayer and binding on the tax collector is. "Form" is "substance" when it comes to law. The words of law (its form) determine content (its substance). How odd, then, to permit the tax collector to reverse the sequence—to allow him to determine the substance of a law and to make it govern "over" the written form of the law—and to call it a "doctrine" no less.
>
> . . . .
>
> It's one thing to permit the Commissioner to recharacterize the economic substance of a

transaction—to honor the fiscal realities of what taxpayers have done over the form in which they have done it.  But it's quite another to permit the Commissioner to recharacterize the meaning of statutes—to ignore their form, their words, in favor of his perception of their substance.

*Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 781 (6th Cir. 2017).

By applying his perception of substance over the Employment Agreement's form, the Arbitrator engaged in the same thing.  He "ignored [the Employment Agreement's] form, [the Employment Agreement's] words, in favor of his perception of [the Employment Agreement's] substance."  The Arbitrator did not have this authority—the parties did not give it to him; the FAA did not give it to him; case law did not give it to him.

Because the Arbitrator admitted to disregarding the Employment Agreement's text based on an outcome he felt was not fair, Brown asks the Court reverse the district court's order confirming the Arbitration Award because the Arbitrator exceeded his powers.  *See* 9 U.S.C. §§ 10(a)(3) & 10(a)(4).

**C. The Arbitrator decided an issue—whether MRI terminated Brown's employment "for Cause"—that the Parties never presented for determination**

To the extent this Court finds the Arbitrator actually concluded MRI terminated Brown's employment for Cause—not just that it *could have*, but it actually *did*—the Court should reverse the district court and vacate the Arbitration Award because the parties never submitted the issue that Brown's employment was terminated for Cause to the Arbitrator. *See* App. 269; Add. 15, R. Doc. 789, at 15 ("[T]he Arbitrator arrived at a conclusion that was not asserted by either party."). There is no question it is the parties—not the arbitrator—who determine what they want an arbitrator to decide: "[T]he parties, not the arbitrator, must define the issues," with the parties' submission becoming "'the source and limit' of the arbitrator's power." *Int'l Chem. Workers Union Local No. 566 v. Mobay Chem. Corp.*, 755 F.2d 1107, 1110 (4th Cir. 1985). A court must vacate an arbitrator's decision if it finds the arbitrator decided a matter outside the issues submitted for arbitration. *Id.*

It is beyond dispute the central issue related to Brown's employment termination was whether he voluntarily resigned—as was MRI's unwavering position—or whether MRI fired him without Cause—as argued by Brown. MRI's only fleeting reference of firing "for Cause" in piles of filings was a hypothetical suggestion (and concession) that MRI *could have* terminated Brown's employment for Cause, but *did not* actually do so. *See* App. 254; R. Doc. 782, at 271. Accordingly, to the extent the Court finds the Arbitrator determined MRI actually terminated Brown's employment for Cause, it should vacate or modify the Arbitration Award because the Arbitrator acted outside the scope of his duties by deciding that issue which the parties did not put before him. *See* 9 U.S.C. §§ 11(b).

## III. THE ARBITRATOR REFUSED TO HEAR EVIDENCE RELATED TO BROWN'S FRAUDULENT INDUCEMENT COUNTERCLAIM AND DEFENSE

The Arbitrator determined Brown could not present evidence on his counterclaim and defense to the breach of contract at the hearing, for any purpose. *See* App. 175-179; R. Doc. 748-5, at 8-12. In other words, the Arbitrator did not just refuse to *consider* the evidence; he refused even to *hear*

it. Because Brown was not permitted to present evidence that he was fraudulently induced to sign the Employment Agreement, he was not able to defend against MRI's breach of contract claim on the ground the Employment Agreement never existed, by virtue of MRI's fraud. *See* App. 200-223; R. Doc. 781, at 9-32; *see also, e.g.*, *Radioshack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256, 260 (Ky. App. 2007) (holding under Kentucky law—which applied to the Employment Agreement—that "fraud vitiates everything into which it enters").[10]   As a result, Brown also was not able to pursue his EA fraud counterclaim, a claim which the district court directed to be arbitrated.

---

[10] As an alternative position to his argument he never entered the Employment Agreement because his consent was induced by fraud, Brown argued MRI breached the Employment Agreement (if it existed). Such alternative arguments are permissible, and Brown's argument that MRI breached the Employment Agreement does not mean he could not alternatively claim the Employment Agreement never existed. *See, e.g.*, *Cont'l Holdings, Inc. v. Crown Holdings Inc.*, 672 F.3d 567, 577 (8th Cir. 2012) ("Yet, nothing precluded Continental from arguing in the alternative that if the court found the provision ambiguous, it should look to extrinsic evidence to determine the provision's meaning."); *United States v. Richardson*, 427 F.3d 1128, 1135 (8th Cir. 2005) (Melloy and Heaney, JJ., concurring) ("[I]t is fundamental that a party may advance arguments in the alternative . . . ."), *modified on other grounds by* 439 F.3d 421, (8th Cir. 2006) (en banc).

The Arbitrator violated § 10(a)(3) of the FAA by refusing to hear evidence pertinent and material to the controversy—namely, evidence that MRI fraudulently induced Brown to enter into the Employment Agreement. "A party seeking to vacate an award for misconduct under § 10(a)(3) must show that he was deprived of a fair hearing." *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014) (quotations omitted). The paradigmatic § 10(a)(3) challenge is one in which an arbitrator declines to take evidence offered by a party—exactly what happened to Brown. *Riniker v. UnitedHealth Grp., Inc.*, 2015 U.S. Dist. LEXIS 51300, at *9 (D. Minn.).

### A. The Scope Order was an evidence-precluding decision, not a dispositive merits decision

It is important to note what the Arbitrator's pre-hearing Scope Order was, and what it was not. It was not a decision on a dispositive motion where the Arbitrator heard all the evidence and determined that, even when the evidence is considered in a light most favorable to Brown, his EA fraud counterclaim could not survive. *Cf. Dixie Fuel Co., LLC v. Straight Creek, LLC*, 2011 U.S. Dist. LEXIS 162534, at *5-6 (E.D. Ky. Oct. 27, 2011) ("Motions in limine are meant to deal with discrete evidentiary issues related to trial, and

not another excuse to file dispositive motions disguised as motions in limine." (citation omitted)); S*chedin v. Johnson & Johnson (In re Levaquin Prods. Liab. Litig.)*, 2010 U.S. Dist. LEXIS 145282, at *7 (D. Minn. Nov. 9, 2010) ("[M]otions in limine are not proper procedural devices for the wholesale disposition of theories or defenses." (citation omitted)).  The Scope Order also was not a full consideration of the facts supporting Brown's EA fraud counterclaim, much less a hearing on the merits.  By his Scope Order, the Arbitrator specifically refused to allow evidence supporting Brown's EA fraud counterclaim as part of the hearing.  By refusing to hear that evidence, the Arbitrator certainly did not hear the counterclaim for which that evidence would have been submitted.[11]

---

[11] The Scope Order's footnote 3 does not show it was a dispositive order on Brown's EA fraud counterclaim.  Brown's argument referenced by the Arbitrator in footnote 3 related to MRI's proposed evidence that Brown sought to fraudulently induce MRI to enter not the Employment Agreement, but the separate SPA—which agreement did not include an arbitration clause.  Obviously, MRI's claim it was fraudulently induced to enter into an agreement not subject to arbitration could not be arbitrated—because the SPA was not a part of the Employment Agreement (the contract containing the arbitration provision).

Rather, the Scope Order ruling was a pre-hearing order on the scope of disputes and evidence permitted to be submitted by the parties, then heard by the Arbitrator, once the hearing occurred. The ruling's name is the first hint: "Order on Scope of Arbitration"—not order on summary judgment, not order dismissing counterclaims, etc. And this is not form over substance. The Scope Order's content confirms it was a ruling on what issues the Arbitrator refused to hear as being, in the Arbitrator's judgment, irrelevant and immaterial to the disputes at issue. The Scope Order determined that certain "matters" were "beyond the scope of the[ parties'] agreement to arbitrate." App. 172; R. Doc. 748-5, at 5. Obviously if the matters were beyond the scope of the Employment Agreement's arbitration provision, then those matters were never heard (and apparently could never be heard) by the Arbitrator. The matters (including evidence supporting Brown's EA fraud counterclaim) were outside the Arbitrator's purview. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding questions of arbitrability left to arbitrator when parties agreed to "arbitrate 'gateway' questions of 'arbitrability'").

The final sentence of the Scope Order's discussion of Brown's fraudulent inducement evidence underscores the decision was a pre-hearing ruling precluding evidence, not a dispositive merits decision: "The Arbitrator finds that the high level of complexity and detail in this transaction between these sophisticated parties, rather than operating to require parole [sic] evidence, *further supports the finding that parole [sic] evidence should not be relied upon to interpret the Employment Agreement on this issue*." App. 179; R. Doc. 748-5, at 12 (emphasis added).

Consistent with the Scope Order, Brown was required to withdraw several documents he had hoped to introduce as exhibits at the hearing, and he was precluded from questioning MRI witnesses on evidence that would have gone toward proving the elements of a fraudulent inducement counterclaim. *See United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (for fraudulent inducement plaintiff must show, among other things, that defendant made a material representation, which is false, known to be false or made recklessly, and made with inducement to be acted upon); *see*

*also, e.g., Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38-39 (Minn. 1967) (same elements under Minnesota law).[12]

The fact the Arbitrator described his evidence preclusion ruling as being based on "careful review of the relevant documents (most importantly the Employment Agreement containing the parties' agreement to arbitrate) and the detailed arguments of counsel for both parties on this issue," does not mean the Arbitrator "heard" the evidence supporting Brown's EA fraud counterclaim. Brown's EA fraud counterclaim was not a breach of contract claim; it was a common law tort claim. Despite that, the Scope Order held that "whether Claimant had a legal obligation to transfer certain assets to Wendy Brown is not a 'dispute' between MRI and Allan Brown that may properly be adjudicated in this arbitration, and evidence relating to that issue will therefore not be admitted." App. 176; R. Doc. 748-5, at 9. At best, this sentence disposes of a breach of contract theory, but does not dispose of Brown's tort-based fraudulent inducement theory.

---

[12] Brown did not elicit such testimony in the Kentucky Arbitration.

**B.   The Arbitrator's Scope Order manifestly misconstrued Brown's Employment Agreement fraud counterclaim**

Through the Scope Order, the Arbitrator disallowed Brown from having his fraudulent inducement evidence heard.  In deciding the Scope Order, the Arbitrator manifestly misconstrued the issue of what evidence Brown was seeking to have heard.  The Arbitrator considered it not to be one of fraudulent misrepresentations made outside the contract (which it is), but instead to be one of contract interpretation and parol evidence (which it is not).  Among other things, the Arbitrator stated in his Scope Order:

> [T]he Arbitrator finds that ***Respondent's claim that Claimant violated the Employment Agreement*** by failing to transfer certain assets to Wendy Brown is not supported by the terms of the Agreement, nor subject to interpretation/modification by parole [sic] evidence.  Stated another way, whether Claimant had a legal obligation to transfer certain assets to Wendy Brown is not a "dispute" between MRI and Allan Brown that may properly be adjudicated in this arbitration, and evidence relating to that issue will therefore not be admitted.

*Id.* (emphasis added).   Clearly the Arbitrator misconstrued Brown's fraudulent inducement counterclaim—brought in tort—as instead being

some sort of breach of contract claim (based either on an oral agreement or the Employment Agreement itself), which it is not and never was.

Brown did not contend the Employment Agreement includes terms requiring the sale of certain assets to Wendy. Instead, Brown contended that MRI fraudulently induced him to enter into an employment relationship with MRI via the Employment Agreement by promising to sell certain assets to Wendy in a separate transaction. Brown never sought in the Arbitration to introduce evidence of the fraudulent inducements to vary the terms within the "four corners" of the Employment Agreement. Rather, Brown sought only to admit evidence of MRI's fraudulent inducements—a separate tort that is not circumscribed by either an integration clause or the parol evidence rule. *See Radioshack*, 222 S.W.3d at 259 (explaining that "neither the parol evidence rule nor the merger and integration clauses in the contract precluded [the plaintiffs] from presenting evidence on their misrepresentation claim" because "false and fraudulent representations made by one of the parties to induce the other to enter into the contract are not merged in the contract").

## C. Brown should have been allowed to present evidence showing he was fraudulently induced into entering into the Employment Agreement

Brown sought to defend against MRI's breach of contract claim—separate and apart from asserting his own counterclaim—by showing he was induced into signing the Employment Agreement through fraud. Simply stated, Brown alleges MRI duped him by promising to sell certain assets to Wendy (the non-industrial business of ARI, or Minnesota Business) as an inducement for Brown to sign the Employment Agreement with no intention to do so, and because his consent was fraudulently induced, the Employment Agreement and all its provisions—including the non-competition provision, the arbitration provision, and the integration clause—never existed.

The Arbitrator nonetheless concluded evidence related to Brown's fraudulent inducement defense is considered "parole [sic] evidence" prohibited by the Employment Agreement's integration clause, and would be "inadmissible in this proceeding" to show the Employment Agreement was procured by fraud. This erroneous conclusion resulted in Brown not

getting to introduce evidence related to fraudulent inducement and denied him a fair hearing.

It is well-established that fraudulent representations made by one party to induce the other to enter into a contract are not merged into a contract via that fraudulently induced contract's integration clause. It is well-established because it would be nonsensical. In such circumstances, extrinsic evidence is admissible to show the making of the contract was procured by fraudulent representation, and this does not vary the contract's terms. *See PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 720 (Ky. App. 2016) (citations omitted); *Radioshack Corp.*, 222 S.W.3d at 260. In this case, the evidence Brown sought to introduce in support of his fraudulent inducement arguments does not vary or alter the terms of the Employment Agreement.

As the Kentucky Court of Appeals has stated:

> [F]alse and fraudulent representations made by one of the parties to induce the other to enter into the contract are not merged in the contract. "It is a stern but just maxim of law that fraud vitiates everything into which it enters." *Veterans Service Club v. Sweeney*, 252 S.W.2d 25, 27 (Ky. 1952). Parol evidence is

> admissible to show that the marking of the contract
> was procured by fraudulent representations.  This
> does not vary the terms of the contract.  *Id.  See also
> Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005).

*Radioshack Corp.*, 222 S.W.3d at 260.  The *Radioshack* court concluded,

"Comsmart and Dean brought their counterclaim alleging that the contract

was procured by fraud.  ***Thus, parol evidence was admissible to prove this***

***claim notwithstanding the merger and integration clauses in the contracts.***

***Therefore, the trial court properly admitted the evidence***."  *Id*. at 261

(emphasis added) (internal citations omitted).

Despite Brown's actual counterclaim and defense, and despite clear

law from the Kentucky Supreme Court, the Arbitrator disallowed Brown

from having his fraudulent inducement evidence heard, evidence that

would have provided Brown a tort remedy and defense for MRI

fraudulently inducing him into the Employment Agreement, including its

non-compete provisions (and the arbitration provision itself), to which

Brown never would have agreed had he known that MRI never had any

intention of selling the Minnesota Business to Wendy.

**D.    The Arbitrator's refusal to hear evidence related to fraudulent inducement deprived Brown of a fair hearing**

The Arbitrator deprived Brown of a fair arbitration hearing by refusing to hear, as an evidentiary matter, evidence relating to fraudulent inducement.

The decision *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 37 (1st Cir. 1985), is instructive. *Hoteles* concerned an employee who was terminated for exposing himself in a lude manner to a hotel guest, Mrs. Flores. A criminal complaint was filed against the employee, and Mrs. Flores—the only witness to the event— provided testimony in support of the prosecution's charges. But Mrs. Flores was unable to provide testimony at the arbitration. The company therefore sought to introduce Mrs. Flores's trial transcript from the criminal proceeding to support its claim the lude exposure actually occurred. The arbitrator refused to hear this evidence because it "did not afford the arbitrator an opportunity 'to observe and receive the impact of the appearance, gestures, voice, and attitudes' of the witnesses and to assess for himself the credibility of each witness's testimony."

The First Circuit vacated the arbitration award. It did so because the arbitrator incorrectly concluded the evidence was inadmissible, with the court finding it was "unquestionably relevant"; consequently the arbitrator's refusal to prescribe "any weight to the testimony given at the criminal proceedings effectively denied the Company an opportunity to present any evidence in the arbitration proceeding." *Id.* at 40. The court continued: "The evidence effectively excluded by the arbitrator was both 'central and decisive' to the Company's position; therefore, the arbitrator's refusal to consider this evidence was, as the district court concluded, "so destructive of [the Company's] right to present [its] case, that it warrants the setting aside of the arbitration award." *Id.*

The same reasoning unquestionably applies here. As stated above, the Arbitrator's conclusion that fraudulent inducement evidence was prohibited by the Employment Agreement's integration clause and parol evidence rules was just plain wrong. *See* App. 175-179; R. Doc. 748-5, at 8-12; *see also* Add. 24-25; App. 278-79; R. Doc. 789, at 24-25. And because the Arbitrator's ruling was so broad, it meant "no other evidence was available to

substantiate or to refute" Brown's assertion that he was fraudulently induced into signing the Employment Agreement. In other words, a decision incorrectly grounded on principles of parol evidence effectively precluded Brown from introducing *any* evidence—indeed the "central and decisive" evidence—in support of his counterclaim and defense. This is grounds for vacatur.

**E. Brown did not waive his right to challenge the Arbitrator's Scope Order**

Brown anticipates MRI will argue Brown waived his right to challenge the Arbitrator's Scope Order by (1) purportedly stipulating to dismiss his EA fraud counterclaim, and/or (2) complying with the Arbitrator's Scope Order during the Arbitration and not seeking to introduce fraud evidence. *See* App. 184-92; R. Doc. 765 (arguing the same in MRI's Amended and Restated Memorandum in Opposition to Motion to Lift Stay). Both arguments lack merit. Brown did not stipulate to dismiss his EA fraud counterclaim. And Brown is unaware of any rule that would have allowed him to disregard or challenge the Arbitrator's ruling.

For its argument of some sort of stipulated dismissal, MRI relied on the parties' Joint Report of Parties Regarding Scope and Status. App. 188; R. Doc. 765, at 5. The Report's purpose was not to select what claims and evidence each side wanted to submit during the Arbitration—those arguments were made in advance of the Arbitrator's Order on Scope—but rather to "address the impact of the Arbitrator's August 2021 Order on Scope of Arbitration." *Id*. The "impact" of the Scope Order was that Brown could not submit any evidence related to fraudulent inducement. *See supra*. In other words, Brown was plainly not stipulating to dismiss anything. He was merely acknowledging the Arbitrator had precluded him from addressing fraudulent inducement, in any capacity, offensively or defensively, at the hearing.

MRI's other argument was that Brown waived his right to seek relief from this Court because he "never filed an Objection to the Arbitrator's July 30, 2021 Order." App. 190; R. Doc. 765, at 7. MRI never explained what "Objection" Brown could have or should have filed, or with whom. MRI also asserted no authority to allow for such a filing, or for the proposition

that Brown is prohibited from seeking vacatur unless he first filed some mystery "Objection" to someone (presumably the Arbitrator?) to change something. MRI asserted no authority because there is none. Brown did not have a mechanism to seek formal reconsideration or ask the Arbitrator to try a second time.[13] There is no arbitration rule recognizing a motion to reconsider. As two general rules, an arbitrator cannot reconsider determinations, and even in court a reconsideration request is not a prerequisite to a later challenge to an order. *Cf. Office & Pro'l Employees Int'l Union, Local 471 v. Brownsville Gen'l Hosp.,* 186 F.3d 326, 331 (3d Cir. 1999); *Williams v. New Castle Cnty.,* 970 F.2d 1260, 1266 (3d Cir. 1992) (party not required to move for reconsideration as a precondition to an appeal); D. Minn. L.R. 7.1(j) (stating parties do not have a right to file a motion to reconsider and must show "compelling circumstances" to obtain

---

[13] Although he did try, which MRI acknowledged when it moved the Arbitrator to strike witness and exhibit lists, for entry of default and for imposition of additional sanctions on October 18, 2021.

permission).  Thus, Brown could not have "intentionally relinquished a known right" because he had no "right" to seek a re-do in the first place.[14]

An actual example of a waiver can be found in *Kronzer v. First Nat'l Bank*, 235 N.W.2d 187, 195 (1975), which MRI featured in briefing before the district court.  *Kronzer* concerned an actual "stipulation of settlement" that "contained language by which the plaintiffs expressly abandoned all claims against the trust and the amendments thereto."  The stipulation of settlement further provided that a 1970 amendment to the trust was the governing instrument going forward with respect to the at-issue relationship.  So when the plaintiffs raised an issue in subsequent litigation on the 1970 amendment's validity, the court deferred to the settlement stipulation and prevent the issue from moving forward.  *Kronzer* has nothing to do with the issue of failing to request reconsideration in arbitration.

**IV.  THE DISTRICT COURT CLERK OFFICE'S RECORDING OF THE JUDGMENT, WHICH IS SOLELY AGAINST BROWN, SHOULD BE CLARIFIED AND/OR CORRECTED TO ACCURATELY**

---

[14] At worst, Brown did not drop a footnote into the Joint Report of Parties Regarding Scope and Status stating he was reserving his right later to challenge the Scope Award.  The absence of such a reservation does not show intentional relinquishment.

**REFLECT THE REALITY THAT THE JUDGMENT IS AGAINST ONLY BROWN, AND NOT ANY OTHER INDIVIDUALS OR ENTITIES**

This issue has thoroughly been briefed by the parties because MRI "moved to dismiss" this issue before briefing began.

On June 29, 2023, this Court granted Plaintiff's motion to confirm the Arbitration Awards, which awarded MRI $1,568,864.69, plus interest until paid in full. Add. 30; App. 284; R. Doc. 789, at 30. The Order stated in relevant part:

> "Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, **per the Arbitration Award and the Arbitrator's Order/Award on Claimant's Motion for Attorney Fees and Costs**." *Id*. at 30 (emphasis added). The Court issued a Judgment the next day, which stated in relevant part: "Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, **per the Arbitration Award and the Arbitrator's Order/Award on Claimant's Motion for Attorney Fees and Costs**."

*Id.* (emphasis added).

The Arbitration was solely between Brown and MRI, therefore the awarded amount was against only Brown.  The Arbitration Award reads in relevant part:

> **Respondent, Allan K. Brown, shall pay to Claimant, Management Registry, Inc.** the sum of $1,422,716.00, which is found to be the compensable damages resulting from Respondent's individual actions relating to Claimant's claim for Breach of Contract (and those claims found to be subsumed therein for purposes of determining damages).

> **Respondent, Allan K. Brown shall pay to Claimant, Management Registry, Inc.** the sum of $18,875.00, which is found to be the amount of additional out-of-pocket expenses actually incurred by Claimant as a direct ("but-for") consequence of Respondent's individual actions relating to Claimant's claims.

App. 248-49; R. Doc. 781, at 57-58.  The related Arbitrator's Order/Award on Claimant's Motion for Attorney Fees and Costs in the amount of $127,273.69 also was against only Brown, the only respondent party to the arbitration. *Id.*  That amount plus the two amounts referenced above, total the Judgment amount against Brown ($1,422,716 + $18,875 + $127,273.69 = $1,568,864.69).

Notwithstanding all this, and likely due to the Judgment being issued by the Court within the ongoing Minnesota litigation involving Defendants

Allan Brown, Wendy Brown, A.W. Companies, Inc., and Milan Batinich (and

therefore containing a case caption with all four Defendants), within the

district court clerk's office, the Judgment was incorrectly recorded through

an apparent clerical error as jointly against Allan Brown, A.W. Companies,

Inc., Wendy Brown, and Milan Batinich.   In Lexis the recording entries

appears as:

## Judgments

| Date | In Favor Of | Against | Amount | Interest | Court Cost | Status | Status Date |
|------|-------------|---------|--------|----------|------------|--------|-------------|
| 06/28/2023 | Management Registry, Inc. | A.W. Companies, Inc. | $1568864.59 Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, per the Arbitration Award and the Arbitrators Order/Award on Claimants Motion for Attorney Fees and Costs | 0.00% | $ 0.00 | No Payment | 06/28/2023 |
| 06/28/2023 | Management Registry, Inc. | Milan Batinich | $1568864.59 Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, per the Arbitration Award and the Arbitrators Order/Award on Claimants Motion for | 0.00% | $ 0.00 | No Payment | 06/28/2023 |

| Date | In Favor Of | Against | Amount | Interest | Court Cost | Status | Status Date |
|---|---|---|---|---|---|---|---|
| | | | Attorney Fees and Costs | | | | |
| 06/28/2023 | Management Registry, Inc. | Allan K. Brown | $1568864.59 Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, per the Arbitration Award and the Arbitrators Order/Award on Claimants Motion for Attorney Fees and Costs | 0.00% | $ 0.00 | No Payment | 06/28/2023 |
| 06/28/2023 | Management Registry, Inc. | ==Wendy Brown== | $1568864.59 Plaintiff is awarded $1,568,864.69, plus interest at a rate of 6% per annum, from December 14, 2022, until paid in full, per the Arbitration Award and the Arbitrators Order/Award on Claimants Motion for Attorney Fees and Costs | 0.00% | $ 0.00 | No Payment | 06/28/2023 |

(Emphases added).

After he noticed his appeal on July 5, 2023, Brown discovered the clerical mistake through counsel reviewing the docket on Lexis. Upon discovery, Brown and his non-arbitral co-defendants on August 10, 2023, moved the district court for an indicative order to correct the clerical mistake

underlying the Third Issue.  Brown and his non-arbitral co-defendants asserted Federal Rules of Civil Procedure 60 and 62.1 provide grounds for the district court to issue an indicative ruling to correct the clerical error notwithstanding an appeal.

Brown and his non-arbitral co-defendants alternatively argued the district court had authority to correct the clerical mistake without remand from this Court.  Federal Rule of Civil Procedure 62.1's Advisory Committee notes state:  "If the district court concludes that it has authority to grant relief without appellate permission, it can act without falling back on the indicative ruling procedure."  Of course, if this Court and/or the district court determine that the district court can direct the clerk's office to correct the erroneous docketing entry (which it should, since the district court has not been divested of jurisdiction over the non-arbitral co-defendants), Brown would welcome such directive to do so from this Court, this issue would be rendered moot, and no more paper would be wasted on correcting this clerical error.

Brown and his non-arbitral co-defendants further explained to the district court that Federal Rule of Appellate Procedure 12.1 grants this Court authority to grant a limited remand to correct the clerical error while still retaining appellate jurisdiction.  As of this filing, the motion before the district court is fully briefed and remains pending before that court.

In sum, this issue has little to do with Brown's appeal's merits argument; he simply is ensuring no one can argue he waived his ability to correct this clerical error.  Practically speaking, this issue should be resolved by the time this Court considers Brown's appeal.  But if not for whatever reason, Brown asks the Court—even if it affirms the district court's order confirming the Arbitration Award—to remand with directions directing the district court and/or the district court clerk to amend the judgment so that it is against the only defendant subject to the arbitration, Brown.

## CONCLUSION

Brown recognizes the broad deference and authority afforded to an arbitrator.  But even so, the FAA has guardrails, and the Arbitrator's decision went overboard.  The Arbitrator failed to enforce Brown's Employment

Agreement's plain language, and the Arbitrator stymied Brown from presenting evidence—as is his right—related to fraudulent inducement, relevant to his counterclaim and defenses to MRI's breach of contract claim. Brown therefore requests the Court reverse the district court order confirming the Arbitration Award and dismissing Brown's EA fraud counterclaim, and remand with directions to the district court to vacate the Award. Moreover, whether the Court affirms or reverses, Brown asks it to remand directing the district court and/or the district court clerk to correct the clerical error so that only Brown is subject to the Judgment.

NILAN JOHNSON LEWIS PA

Dated: September 28, 2023

By: *s/ Joel Andersen*
    Joel Andersen (#352573)
    Katie M. Connolly (#0338357)
    Christopher T. Ruska (#0401745)
    250 Marquette Avenue South, Suite 800
    Minneapolis, MN 55401
    Phone: (612) 305-7500
    Fax: (612) 305-7501
    jandersen@nilanjohnson.com
    kconnolly@nilanjohnson.com
    cruska@nilanjohnson.com

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

Certificate of Compliance with the Type-Volume Limitation, the Typeface Requirements, and the Type Style Requirements of Fed. R. App. P. 32(a) and with the Technical Requirements of 8th Cir. R. 28A(h).

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,817 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Palatino Linotype font, using Microsoft Word 365 Version.

The digital version of this brief filed herewith has been scanned for viruses and to the best of my knowledge, is virus-free.

NILAN JOHNSON LEWIS PA

Dated: September 28, 2023        By: *s/ Joel Andersen*_____

Joel Andersen (#352573)
Katie M. Connolly (#0338357)
Christopher T. Ruska (#0401745)
250 Marquette Avenue South,
Suite 800
Minneapolis, MN 55401
Phone: (612) 305-7500
Fax: (612) 305-7501
jandersen@nilanjohnson.com
kconnolly@nilanjohnson.com
cruska@nilanjohnson.com

ATTORNEYS FOR APPELLANT

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 28, 2023, an electronic copy of the Brief and Addendum of Appellant was filed with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participant in this case is a registered CM/ECF user and that service of the Brief will be accomplished by the CM/ECF system:

MORRIS & MORRIS, P.S.C.
James M. Morris (KY #85709)
217 North Upper Street
Lexington, KY 40507

FAFINSKI MARK & JOHNSON
V. John Ella (#249282)
775 Prairie Center Drive, Suite 400
Eden Prairie, MN 55344

NILAN JOHNSON LEWIS PA

Dated: September 28, 2023

By: *s/ Joel Andersen*

Joel Andersen (#352573)
Katie M. Connolly (#0338357)
Christopher T. Ruska (#0401745)
250 Marquette Avenue South,
Suite 800
Minneapolis, MN 55401
Phone: (612) 305-7500
Fax: (612) 305-7501
jandersen@nilanjohnson.com
kconnolly@nilanjohnson.com
cruska@nilanjohnson.com

ATTORNEYS FOR APPELLANT